**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

APRIL HOUSE,

Plaintiffs,

v.

PORTALUS LLC, et al.,

Defendants.

Case No.: 25-CV-03451-W (BJW)

**ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF WASHINGTON [DOC. 14]**

Pending before the Court is Defendants Portalus LLC ("Portalus"), HR Benefits Inc. ("HRBI"), Washington Technology Industry Association ("WTIA"), and Michael Thomas Schutzler's (collectively, "Defendants") motion to stay and to transfer this action to the Western District of Washington under 28 U.S.C. § 1404(a). Plaintiff April House opposes and requests attorney's fees under California Labor Code § 925(c).

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **DENIES** the motion [Doc. 14] and **DENIES** Plaintiff's request for attorney's fees.

## I. Background

In October 2021, House was hired as President of HRBI, a wholly owned subsidiary of WTIA. (*Compl.* [Doc. 1-3] ¶ 11; *Agreement* [Doc. 14-2] at 1.) Portalus, HRBI, and WTIA (collectively, the "Employer") are headquartered in King County, Washington. (*Compl.* ¶¶ 2–4, 6.) House alleges that at all material times she resided and worked in San Diego County, California. (*Id.* ¶ 1.) Other than occasional short trips to Washington, she performed her job from California. (*House Decl.* [Doc. 15-2] ¶ 4.)[1]

When she was hired, House signed an Executive Employment Agreement with HRBI (the "Agreement"), which she understood to be a prerequisite for her employment. (*House Decl.* ¶ 3; *Agreement* at 6.) She was not represented by counsel at the time of signing. (*House Decl.* ¶ 3.) Section 6.3 of the Agreement provides that it "shall be governed by and construed and enforced in accordance with the laws of the State of Washington and venue for any dispute shall be in King County, Washington." (*Agreement* § 6.3.)

House alleges that, beginning in October 2021, she was subjected to verbal harassment, unwanted touching, and unwanted sexual advances by Schutlzer (WTIA's Chief Executive Officer and her supervisor) until December 31, 2024, when he resigned. (*Compl.* ¶¶ 5, 7, 11.) The Complaint describes more than fifteen dated incidents, most of them sexual or romantic comments, and several involving physical contact, including Schutzler touching her hands, face, and lips in August 2023 and holding her hands in August 2024. (*Id.* ¶¶ 12–13.) The Complaint does not identify where any of the incidents

---

[1] Defendants object to paragraphs 3 and 4 of the House Declaration on relevance, hearsay, lay-opinion, and personal-knowledge grounds. (*Objs.* [Doc. 16-7].) The objections are **OVERRULED**. Where House lived and worked, whether she was represented by counsel, and where she was when she received Schutzler's communications are matters within her personal knowledge; they are not out-of-court statements offered for their truth; and they bear directly on the questions presented. *See* Fed. R. Evid. 401, 602, 701, 801(c). To the extent paragraph 3 describes House's understanding that signing the Agreement was a prerequisite for her employment, Defendants offer nothing to the contrary and acknowledge that she voided the forum-selection clause. (*Reply* [Doc. 16] 5.)

occurred. House states that a few occurred in person while she was in Washington, but that the "vast majority" occurred through digital messaging or video while she was in California. (*House Decl.* ¶ 4.) Schutzler states that "[m]ost interactions [he] had with [House] occurred in Washington," but he does not address any of the interactions identified in the Complaint. (*See Schutzler Decl.* [Doc. 14-4] ¶ 7.)

On February 9, 2025, House reported Schutzler's conduct to WTIA and Portalus, and reported that an earlier investigation of another employee's sexual-harassment complaint against Schutzler had not been thorough. (*Compl.* ¶ 13.) She alleges the Employer never investigated her complaint. (*Id.* ¶ 14.) On May 8, 2025, House filed a complaint with the California Civil Rights Department and received a right-to-sue letter. (*Id.* ¶ 16.)

On October 15, 2025, House filed this lawsuit in the San Diego Superior Court, asserting claims under California's Fair Employment and Housing Act ("FEHA") for hostile work environment sexual harassment and quid pro quo sexual harassment, Cal. Gov. Code § 12940(j), and for failure to prevent harassment, id. § 12940(k). (*Compl.* ¶¶ 17–30.) On December 5, 2025, Defendants removed the case to this Court based on diversity jurisdiction. (*Notice of Removal* [Doc. 1].)

On December 30, 2025, Portalus and WTIA sued House in Washington state court, asserting tort, contract, and statutory claims arising from her employment. (*Opp'n* [Doc. 15] 2; *Vasquez Reply Decl.* [Doc. 16-2] ¶ 5, Ex. C [Doc. 16-5] at 2–5.) House removed that action to the Western District of Washington and moved to dismiss it on the ground that the claims were compulsory counterclaims in this case or, alternatively, to transfer it here. (*Opp'n* 2.) The Western District denied the motion, holding "application of the *Jones* factors shows that transfer is unwarranted." *Portalus LLC v. House*, No. 2:26-cv-00361-TLF [Doc. 23], 13–14 (W.D. Wash. Apr. 16, 2026).

Defendants filed this motion on March 27, 2026. (*P&A* [Doc. 14].) They seek to stay the case pending resolution of the motion and to transfer it to the Western District of Washington. (*Id.* at 7–18.) On April 14, 2026, House notified Defendants that she was

exercising her right under California Labor Code § 925(b) to void the Agreement's forum-selection clause. (*Clemens Decl.* [Doc. 15-1] ¶ 3, Ex. 1.[2])

## II. Legal Standards

### A. Transfer of Venue Under 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The statute is intended "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks and citation omitted).

Analysis under § 1404(a) proceeds in two steps. The Court first asks the threshold question whether the action "might have been brought" in the proposed transferee district, evaluating whether that district would have been a proper venue and would have possessed subject matter jurisdiction and personal jurisdiction over the defendants at the time the suit was filed. *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960); *Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1041–42 (S.D. Cal. 2023). If the threshold is satisfied, the Court proceeds to the discretionary inquiry, which requires an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622). The decision whether to transfer is committed to the sound discretion of the district court. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

---

[2] Defendants also object to paragraphs 3 and 4 of the Clemens Declaration. (*Objs.* [Doc. 16-8].) Those objections are likewise **OVERRULED**. Counsel has personal knowledge of the email they sent, which is offered to show that notice was given rather than for the truth of any matter asserted in it, and the Court may take judicial notice of its own order in *Jurek v. Piller USA, Inc.*, 2021 WL 2937050 (S.D. Cal. July 13, 2021). *See* Fed. R. Evid. 201(b), 602, 801(c).

The burden rests with the party seeking transfer to demonstrate that the balance of conveniences favors the transferee forum. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *see also Saleh v. Titan Corp.*, 361 F.Supp.2d 1152, 1155 (S.D. Cal. 2005). That burden is a substantial one: "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). A transfer that would do no more than shift the inconvenience from one party to the other does not satisfy § 1404(a). *Id.*

**B. <u>The § 1404(a) Convenience Factors</u>**

In assessing convenience and fairness under § 1404(a), the Court may consider, among other things: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Jones*, 211 F.3d at 498–99. The relevant public policy of the forum state, if any, is also a factor in the weighing. *Jones*, 211 F.3d at 499.

These considerations are conventionally grouped as private- and public-interest factors. *See Anderson v. Am. Airlines, Inc.*, 2026 WL 2607622, 3–5 (S.D. Cal. September 2, 2026). The private-interest factors address the relative ease of access to sources of proof, the availability of compulsory process, the cost of attendance for willing witnesses, and other practical problems that make trial of a case easy, expeditious, and inexpensive. *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013). The public-interest factors address administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the interest in having a diversity case tried in a forum familiar with the state law that governs

it. *Id.* at 62 n.6; *Decker Coal*, 805 F.2d at 843. No single factor is dispositive, and the Court weighs them in light of the particular circumstances of the case. *See Stewart*, 487 U.S. at 29.

A plaintiff's choice of forum is ordinarily entitled to substantial deference, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). That deference is diminished, however, where the plaintiff's chosen forum lacks a significant connection to the activities alleged in the complaint. *Lou*, 834 F.2d at 739; *see Pac. Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir. 1968) (where "the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration").

### C. <u>Forum-Selection Clauses and California Labor Code § 925</u>

This case involves a disputed forum-selection clause. Before considering whether a forum-selection clause bears on any transfer analysis, the Court must determine whether the parties formed a contractually valid clause at all. That question is governed by state law, and is analytically distinct from the enforceability and interpretation of a concededly valid clause, which are governed by federal law. *DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 963–64 (9th Cir. 2022) (discussing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988)). For employees primarily residing and working in California, the Ninth Circuit has held that California Labor Code § 925 supplies the rule of decision on determining whether an employment contract contains a valid forum-selection clause. *Id.* at 963–66.

Section 925 provides that an employer "shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would" either "[r]equire the employee to adjudicate outside of California a

claim arising in California" or "[d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California." Cal. Lab. Code § 925(a)(1)–(2). Any provision that violates subdivision (a) "is voidable by the employee," and where the employee exercises that right, "the matter shall be adjudicated in California and California law shall govern the dispute." *Id.* § 925(b). The section applies to contracts entered into, modified, or extended on or after January 1, 2017, *id.* § 925(f), and does not apply where the employee was individually represented by legal counsel in negotiating the terms of the agreement, *id*. § 925(e).

Where § 925 renders a clause void at the employee's election, there is no contractually valid forum-selection clause, and the modified transfer analysis reserved for such clauses has no application. See *Atl. Marine*, 571 U.S. at 62 n.5 (noting a modified transfer analysis "presupposes a contractually valid forum-selection clause"); *DePuy*, 28 F.4th at 966–67. The Court instead applies the ordinary § 1404(a) framework set out in Sections A and B: the plaintiff's choice of forum retains its ordinary weight, the private-interest factors are weighed alongside the public-interest factors, and the movant bears the burden of showing that the balance of conveniences favors transfer. *Id.*; *see M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12–13 (1972); *Decker Coal*, 805 F.2d at 843.

California's public policy as expressed in § 925 does not itself dictate the outcome of the transfer inquiry; it is properly weighed as one consideration among the several identified in Section B. *See Stewart*, 487 U.S. at 30–31; *Jones*, 211 F.3d at 498–99.

## III. DISCUSSION

Defendants argue the Agreement's forum-selection clause requires House to litigate in King County, Washington, and that the § 1404(a) factors independently favor transfer. (*P&A* 10–18.) House responds that § 925 renders the clause void and requires this matter to be adjudicated in California, and that the § 1404(a) factors weigh against

transfer. (*Opp'n* 3–7.) The Court addresses the clause first and then turns to the § 1404(a) factors.

**A. The Forum-Selection Clause Is Void Under § 925**

Section 925 governs the Agreement. The Agreement was entered in October 2021, after § 925's effective date. *See* Cal. Lab. Code § 925(f). House primarily resided and worked in California (*Compl.* ¶ 1; *House Decl.* ¶ 4), and she was not represented by counsel in negotiating the Agreement (*House Decl.* ¶ 3). *See* Cal. Lab. Code § 925(e). Section 6.3 requires her to litigate in Washington, under Washington law, claims arising from employment she performed in California. This is precisely the kind of forum selection § 925(a)(1) and (a)(2) prohibit an employer from requiring as a condition of employment. House exercised her right to void the clause on April 14, 2026. (*Clemens Decl.* ¶ 3, Ex. 1.) Defendants do not dispute any of this; to the contrary, they acknowledge that House "exercised her right to void the forum selection clause." (*Reply* 5.) The clause is therefore void and plays no role in the transfer analysis. *See DePuy*, 28 F.4th at 966–67; *Jurek*, 2021 WL 2937050, at *2–3.

House goes further, arguing that because § 925(b) provides that the matter "shall be adjudicated in California," the analysis should end there. (*Opp'n* 3–4.) The Court disagrees. Section 1404(a) is a federal statute that governs a federal court's decision whether to transfer a case to another district. *See Stewart*, 487 U.S. at 29–32. California's policy that disputes between employers and their California employees be adjudicated in California is an important consideration, and the Court weighs it below. But it is at most a single factor in the § 1404(a) balance, not a rule of decision that displaces the statute. *Jones*, 211 F.3d at 499. For the same reason, Defendants' suggestion that House engaged in forum shopping by filing here despite the clause (*P&A* 10–11) is unpersuasive. Filing suit in one's home forum after lawfully voiding a forum-selection clause is the exercise of a statutory right, not forum shopping.

Having found the forum-selection clause void, the Court now turns to the § 1404(a) factors.

**B. Defendants Have Not Shown That Transfer Is Warranted Under § 1404(a)**

The parties do not dispute that this action could have been brought in the Western District of Washington, where all Defendants reside. (*P&A* 8–9.) *See* 28 U.S.C. § 1391(b)(1); *Hoffman*, 363 U.S. at 343–44. The question is whether Defendants have made the "strong showing of inconvenience" required "to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843.

As a preliminary matter, House argues that Defendants waived transfer by waiting until after the Rule 26 conference, the Early Neutral Evaluation and Case Management Conference, and the service of written discovery to file the motion. (*Opp'n* 5.) Section 1404(a) sets no deadline, and Defendants represent that they disclosed their intent to seek transfer at the March 6, 2026 Case Management Conference. (*Fink Decl.* [Doc. 16-1] ¶ 4.) The Court therefore declines to deny the motion on this basis and turns to the merits.

**1. Plaintiff's Choice of Forum**

A plaintiff's choice of her home forum ordinarily receives substantial deference. *Decker Coal*, 805 F.2d at 843; *Jurek*, 2021 WL 2937050, at *3. Defendants argue that deference should be reduced because this forum lacks meaningful ties to the controversy. (*P&A* 10–11; *Reply* 10.) Deference is diminished where "the operative facts have not occurred within the forum." *Lou*, 834 F.2d at 739 (quoting *Pac. Car & Foundry Co. v. Pence*, 403 F.2d at 954). That is not this case. House lived and worked in San Diego County throughout her employment, except for "occasional short trips to Washington." *Compl.* ¶ 1; *House Decl.* ¶ 4. As discussed below, a substantial part of the harassing conduct reached her in California. This factor weighs heavily against transfer.

**2. Contacts Relating to Plaintiff's Claims**

Defendants' principal argument is that, other than House's residence, this case has "absolutely no connection" to California. (*P&A* 5.) In reply, they assert that the in-person incidents described in the Complaint "all . . . allegedly occurred in the State of Washington." (*Reply* 9.) This argument misreads the Complaint, which identifies nearly twenty incidents over three years without specifying where any of them occurred. (*Compl.* ¶¶ 12–13.) Although five of the incidents appear to have occurred in person, *id.* ¶ 12, most of the incidents consist of statements, including comments about House's appearance, professions of love, and remarks about Schutzler's marriage, that could as readily have been made by message or video conference as in person. (*Id.*) The declarations are consistent with this picture. House concedes that "a few incidents" occurred in person in Washington but states that the "vast majority" occurred electronically while she was in California (*House Decl.* ¶ 4), while Schutzler states generally that most of his interactions with House occurred in Washington (*Schutzler Decl.* ¶ 7). Neither declaration ties any specific incident to a location.

Keeping in mind that Defendants bear the substantial burden of showing inconvenience, the Court finds they have failed to demonstrate that most of the harassing conduct occurred in Washington. Instead, the record shows that the harassment claims arise from conduct occurring in both forums, directed at an employee whose workplace was in California. Although Plaintiff's failure-to-prevent claim does turn largely on the Employer's handling of the prior complaint against Schutzler and of House's February 2025 report (decisions presumably made at the Employer's Washington headquarters), her hostile environment and quid pro quo claims do not. (*Compl.* ¶¶ 13–14, 28–29.) In short, on balance, the claims' contacts with California are at least as great as, if not greater than, the contacts with Washington. This factor tips against transfer.

**3. The Parties' Contacts with the Forum**

Defendants are Washington entities and a Washington resident. But the Employer chose to hire a California resident as President of HRBI and to employ her in California for more than three years, and Schutzler supervised her while she worked here. (*Compl.* ¶¶ 1, 5–7, 11; *House Decl.* ¶ 4; *see also Agreement* § 6.4.1 (listing House's California address for notices)). The parties are split, but Defendants' engagement with California through House's hiring means these contacts weigh slightly against transfer.

**4. Convenience of the Witnesses and Costs of Litigation**

Defendants' strongest argument concerns witnesses. They submit declarations from Kelly Fukai, Gil Wootton, Mark Huska, and Thomas Price, who worked with House and Schutzler, live in Washington, and describe the hardships that travel to San Diego would impose, including caregiving obligations for aging parents, in-laws, and children. (*Fukai Decl.* [Doc. 14-5] ¶¶ 2–10; *Wootton Decl.* [Doc. 14-6] ¶¶ 2–7; *Huska Decl.* [Doc. 14-7] ¶¶ 2–7; *Price Decl.* [Doc. 14-8] ¶¶ 2–11.) Schutzler identifies additional potential witnesses, most of whom live in Washington (*Schutzler Decl.* ¶ 9), and Defendants represent that the witnesses identified in House's own initial disclosures also live and work in Washington (*Minkarah Decl.* [Doc. 16-6] ¶¶ 3–5). House's contention that these are all party witnesses whose convenience deserves little weight (*Opp'n* 6) is only partly correct. Fukai, Wootton, and Price no longer work for Defendants and are properly treated as non-party witnesses. (*Fukai Decl.* ¶ 6; *Wootton Decl.* ¶¶ 2, 5; *Price Decl.* ¶¶ 2, 5.) Huska, by contrast, continues to perform contract work for Defendants. (*Huska Decl.* ¶ 6.)

Several considerations nonetheless reduce the weight of this showing. First, the convenience of witnesses matters chiefly for trial; depositions will be taken near where the witnesses live regardless of where the case is venued. *See* Fed. R. Civ. P. 45(c)(1)(A). Second, the declarations describe the witnesses' anticipated testimony only in general terms, each having observed House and Schutzler at meetings, retreats, and other work

functions. (*Fukai Decl.* ¶ 3; *Wootton Decl.* ¶ 3; *Huska Decl.* ¶ 3; *Price Decl.* ¶ 3.) None identifies any incident alleged in the Complaint that the witness observed. And because Portalus was not formed until November 2023 (*Onishi Decl.* [Doc. 14-3] ¶ 12), Price, who worked with House and Schutzler through Portalus (*Price Decl.* ¶¶ 2–3), could have observed at most the final year of the alleged conduct. Third, although travel between Seattle and San Diego is a real burden, it is not the burden of cross-country litigation, and Defendants' own counsel practices in Los Angeles. Fourth, transfer would not eliminate inconvenience; it would shift it to House, who would be required to litigate her California claims in Washington. *See Decker Coal*, 805 F.2d at 843. This factor favors transfer, but only moderately.

**5. <u>Availability of Compulsory Process</u>**

This factor concerns the Court's ability to compel unwilling non-party witnesses to attend trial. *See Jones*, 211 F.3d at 499. Defendants have not identified any witness who is unwilling to testify; each of their declarants has come forward voluntarily in support of the motion. Moreover, Fukai lives and works in Spokane (*Fukai Decl.* ¶ 7), more than 100 miles from the Western District's courthouses, so transfer would not necessarily bring her within that court's trial-subpoena power either. *See* Fed. R. Civ. P. 45(c)(1). This factor is neutral or, at most, slightly favors transfer.

**6. <u>Ease of Access to Sources of Proof</u>**

The documentary evidence House has identified consists largely of Slack messages, emails, and text messages. (*Vasquez Reply Decl.*, Ex. A [Doc. 16-3] at 2–3.) Defendants assert that their personnel files, policies, and related records are in Washington (*P&A* 16), but electronic records can be produced as readily in San Diego as in Seattle. This factor is neutral.

**7. Familiarity with the Governing Law**

House asserts only FEHA claims, and with the forum-selection clause and its Washington choice-of-law provision void, California law governs. *See* Cal. Lab. Code § 925(b). Defendants acknowledge that a transferee court would apply California law. (*Reply* 12.) Although any federal court is capable of applying the FEHA, this Court applies it regularly. This factor weighs slightly against transfer.

**8. Where the Agreement Was Negotiated and Executed**

The Agreement was executed electronically, and the record does not show where it was negotiated. (*Agreement* at 6.) This factor is neutral.

**9. Feasibility of Consolidation**

Defendants point to the Washington action as a companion case in which some witnesses may overlap. (*P&A* 17; *Reply* 11–12.) But Defendants themselves describe the dispute in that case as "inherently different" (*P&A* 17), and the Western District has found the two actions were not "substantially similar" under the first to file rule. (*Opp'n* 2 n.1; *Portalus LLC v. House*, [Doc. 23] at 15.) For the same reason, the fact that House must litigate the Washington action in Washington does not mean transfer would relieve her of any meaningful burden. (*See Reply* 11.) This factor is neutral.

**10. Court Congestion**

Defendants cite the total number of cases filed and pending in each district. (*P&A* 17–18.) Without per-judgeship figures or data on time to trial, those totals say little about whether this case would be resolved more quickly in Washington. This factor is neutral.

**11. Local Interest and California Public Policy**

Washington has an interest in controversies involving employers headquartered there. (*P&A* 17.) But California has a strong interest in protecting employees who live

and work in the state from workplace harassment, and through § 925 the Legislature has expressed a specific policy that such employees' disputes with their employers be adjudicated in California. Cal. Lab. Code § 925(a)–(b). That policy is not dispositive, *Stewart*, 487 U.S. at 30–31, but it is a significant consideration, *Jones*, 211 F.3d at 499. This factor weighs against transfer.

**12. Balancing the Factors**

House's choice of her home forum, the parties' contacts and claims' contacts with California, this Court's familiarity with the FEHA, and California's public policy all weigh against transfer. The convenience of Defendants' Washington witnesses favors transfer, and the remaining factors are neutral or nearly so. That showing does not overcome the substantial deference owed to Plaintiff's choice of forum. At most, transfer would shift the burden of travel from Defendants and their witnesses to House. *See Decker Coal*, 805 F.2d at 843. The Court finds the balance of factors disfavors transferring this case to the Western District of Washington.

As the Court herein resolves Defendants' motion to transfer, Defendants' request to stay this case pending its resolution is moot.

**C. Plaintiff's Request for Attorney's Fees**

House requests $3,000 in attorney's fees incurred in opposing the present motion. (*Opp'n* 8; *Clemens Decl.* ¶¶ 5–6, 17–18.) Section 925(c) permits a court to award reasonable attorney's fees to an employee enforcing her rights under the statute. Cal. Lab. Code § 925(c). However, courts are loath to award fees under § 925(c) absent bad faith or unreasonableness. *Jurek*, 2021 WL 2937050, at 5. Neither is present here. Defendants filed the motion on March 27, 2026 (*P&A* [Doc. 14] at 18), more than two weeks before House voided the forum-selection clause on April 14, 2026 (*Clemens Decl.* ¶ 3, Ex. 1; *Opp'n* 3). The forum-selection argument was therefore not frivolous when it was made, and once the clause was voided Defendants rested on § 1404(a) (*Reply* 5–6), a framework

that remains available. (*See DePuy*, 28 F.4th at 966–67.) House emphasizes that her counsel asked Defendants to withdraw the motion, supplied contrary authority, and received no response. (*Clemens Decl.* ¶ 3, Ex. 1; *Opp'n* 8.) Declining to withdraw a motion that ultimately fails is not, without more, bad faith, and Defendants' showing regarding the location of witnesses was colorable. House's request for attorney's fees is therefore denied.

## IV. Conclusion & Order

For the foregoing reasons, the Court **DENIES** Defendants' motion to stay and to transfer venue [Doc. 14] and **DENIES** Plaintiff's request for attorney's fees. Defendants' evidentiary objections [Docs. 16-7, 16-8] are **OVERRULED**.

**IT IS SO ORDERED.**

Dated: October 15, 2026

Hon. Thomas J. Whelan
United States District Judge